| | | |
|---|---|---|
| TARREN EVANS<br>724 Garrett A. Morgan Blvd<br>Landover, MD 20785 | * | IN THE |
| | * | UNITED STATES DISTRICT |
| | * | COURT FOR THE |
| Plaintiff | * | DISTRICT OF COLUMBIA |
| v. | * | |
| INDIVIDUAL ADVOCACY GROUP, INC<br>8121 Georgia Ave, Suite 1004<br>Silver Spring, MD 20910 | *<br>* | Case: 1:23–cv–03925 JURY DEMAND<br>Assigned To : Contreras, Rudolph<br>Assign. Date : 12/15/2023<br>Description: Gen. Civil (E–DECK) |
| Serve on: | * | CIVIL ACTION NO. ____________ |
| C T CORPORATION SYSTEM<br>1015 15th St NW, Suite 1000<br>Washington<br>DC 20005 | *<br>*<br>* | **DOCUMENT UNDER SEAL** |
| Defendant. | | |

* * * * * * * * * * * * *

## COMPLAINT

**COMES NOW,** Tarren Evans, by and through her attorneys, Paul V. Bennett, Esq. and Bennett Legal Services, Inc., and hereby sues Individual Advocacy Group, Inc. (hereinafter "IAG"), Defendant, and states as follows:

## SUMMARY OF THE CASE

1. This complaint is based on the harassment and retaliation Plaintiff suffered as an employee of Defendant IAG, including her wrongful termination, following Plaintiff reporting and complaining about lack of proper training, and her complaints about improper and illegal business practices, including falsification of business records with the purpose of defrauding the District of Columbia Department on Disability Services ("DDS").



RECEIVED
DEC 15 2023
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## JURISDICTION AND VENUE

2. This court has jurisdiction pursuant to The False Claims Act (FCA), 31 U.S.C. §§ 3729 – 3733; The DC False Claims Act, D.C. Code § 2-381.04; D.C. Law l6-264, the "Department on Disability Services Establishment Act of 2006," effective March 14,2007 (D.C. Official Code §7-761.01 et seq.); and in D.C. Law 15-332, the "Rehabilitation Services Program Establishment Act of 2005," effective April 12, 2005 (D.C. Official Code § 32-331 et seq.) (hereinafter "DC Code").
3. Venue is proper in this Court as the events giving rise to Plaintiff's claims occurred in the District of Columbia and Defendant conducts business within the District of Columbia.
4. That at all times relevant hereto, Tarren Evans, Plaintiff, was an employee of the Defendant in the District of Columbia.
5. That at all times relevant hereto, Defendant IAG, was a nonprofit organization serving adults with disabilities to help them lead meaningful lives. At all times relevant hereto, IAG was contracted to provide services for the DC government, Department on Disability Services.

## FACTS COMMON TO ALL COUNTS

6. Plaintiff was hired by Defendant on or about April 18, 2022 as a Clinical Nursing Director. Her job duties included oversight of IAG's nursing staff and overall nursing operations, specifically evaluating and directing all nursing employees, and establishing goals for the nursing department. Throughout her employment with Defendant, Plaintiff performed her job duties at a level that met or exceeded her employer's reasonable expectations.
7. That at all times relevant hereto, DDS is a government agency which supports Person

Centered Individual Service Plans, service tracking, Medicare and Medicaid Waivers tracking, incident management, consumer intake, provider tracking, quality assurance issue tracking and management reporting to support the service needs of individuals with disabilities.

8. While employed with Defendant, Plaintiff reported to regional director, Dr. Casey Nelson ("Dr. Nelson").

9. Upon hire, Plaintiff's mutually agreed upon schedule was Monday, Wednesday and Friday due to her other employment.

10. In early May 2022, Plaintiff was called by Dr. Nelson to conduct an ISP meeting on a Tuesday. Plaintiff had no knowledge about the supported person at the time and had not yet been fully trained on the DDS processes and annual renewals. She reminded Dr. Nelson of their agreement of availability on Tuesdays and Thursdays.

11. The previous Clinical Nursing Director, Izeku Ekatah a/k/a Izzy, was responsible to train Plaintiff as to the proper manner for conducting her duties, but Director Izzy failed to properly train Plaintiff before she resigned from her position on June 3, 2022.

12. Unlike the previous Clinical Nursing Director, Plaintiff was assigned a full caseload of 10 individuals, while maintaining compliance of various mandatory training for the organization, adhere to clinical needs of all individuals supported from day-to-day, and was required to manage 2 Registered Nurses, 3 Licensed Practical Nurses, and several trained medication employees ("TMEs") which is unprecedented for this position. Plaintiff was the only District Clinical Nursing Director who was assigned such a caseload. Due to the heavy workload, Plaintiff was forced to work on several off days without pay.

13. In approximately June 2022, Plaintiff raised her concerns about lack of training to Dr. Nelson.

14. From approximately June 10, 2022 onwards, Plaintiff was instructed on different occasions by IAG management officials: Sherri Satcher ("Ms. Satcher"), Human Resources Coordinator, Gideon Olatuyi ("Mr. Olatuyi"), Director of Quality Improvement and Martha Nyan ("Ms. Nyan"), Deputy Director, to backdate certain training documents, so that it appeared the training had been completed on an earlier date to avoid residential, medical, or environmental deficiencies with annual contract renewals, individual support plan (ISP) meetings, and trainings being posted on the DDS dashboard.

15. On or about June 10, 2022, Plaintiff raised concerns to Mr. Olatuyi about backdating of training records asking for reasons of this practice. She was told by Mr. Olatuyi that if IAG's management needed to turn in documentation and the real date was not the correct time frame, IAG would get reprimanded for being out of compliance with DDS.

16. In late August 2022, during a medical compliance audit of the individual receiving IAG's services (supported person), Benjamin Guilluame, a nurse consultant, informed Plaintiff that there was an approved mandatory training requirement by DDS within 14 days of employment for nurses new to DDS. The following day, Plaintiff raised her concerns again to Dr. Nelson about the lack of appropriate training she had been given.

17. When Plaintiff asked that Defendant hire an additional nurse to make up for the heavy workload, the management brought back a previously employed community nurse Comfort Sema, RN, on a part-time basis.

18. On multiple occasions, between June of 2022, and March 8, 2023, Plaintiff complained about the general lack of organization within IAG and how DDS supported persons' care was being

compromised at the Defendant's housing facilities. Plaintiff was pressured by Mr. Olatuyi and Ms. Nyan to make misrepresentations of facts to obtain Federal health care payments such as backdate annual "checks offs" and patients' consent forms, and/or ISP annual documents as identified by service coordinators on the DDS dashboard in the DDS Consumer Information System (MCIS).[1] When she refused, she was retaliated against.

19. As a result, Plaintiff was ostracized, ignored, deprived of meeting agendas, and excluded from crucial annual "check offs" meetings particularly towards the end of her employment between December 2022 to March 2023. Ms. Satcher would commonly overstep her job title and raise questions about Plaintiff's medical expertise. On or around December of 2022, while driving into the office, the Plaintiff was asked to pull over to join a meeting that she had no knowledge about.

20. In early December 2022, Plaintiff complained about the generally hostile work environment to Dr. Nelson and Martha Nyan. They both indicated that no one else had such complaints.

21. On at least one occasion, in approximately December 2022, Plaintiff complained that Defendant's compliance deficiencies with DDS regulations might jeopardize her professional licenses.

22. After Plaintiff started making her complaints about illegal actions, as well as the hostility to which she was being subjected, Plaintiff was subjected to retaliation, including being required to work on Tuesdays and Thursdays, her agreed upon days off.

23. On or around September 2022, Plaintiff adamantly pushed IAG toward using electronic health records. IAG purchased a web-based application called "Therap" that enables

[1] DDS dashboard connects service providers to data and reports published by service coordinators in the MCIS database. MCIS is the web-based data system DDS and related agencies use to provide automated tracking of individual consumer data.

Intellectual and Developmental Disabilities (I/DD) service providers to manage and track records for health assessments, medical errors, nursing care plans, training, and billing. However, IAG only used "Therap" for tracking individual daily medical appointments. On several occasions Plaintiff encouraged management to replace paper staff training records with the "real time" electronic records. After one of the administrative meetings, Plaintiff was taken aside by Mr. Olatuyi who stated that "going live" with online records will never happen in IAG due to the backdating of documents and running the risk of getting audited by DDS.

24. On or around January 2023, the backdating of documents was brought up again during a meeting between a guardian of a supported person and DDS service coordinator. All members of the IAG's administrative team were present at the meeting, including Plaintiff's supervisor, Dr. Nelson. The guardian brought up a backdated consent form that was sent to her. The DDS coordinator immediately scolded the IAG team for not sending her documentation to sign in "real time," which was an illegal action. Thus, Plaintiff's suspicions of faulty documentation practices were confirmed.

25. On or about December 31, 2022, Defendant discontinued Plaintiff's medical insurance without informing her. Plaintiff found out about it during her first pregnancy doctor's visit approximately beginning of March 2023. At that time Defendant sent her preventive medical insurance cards only, which was not comparable at all with the coverage agreed upon hiring. As a result, Plaintiff suffered significant out of the pocket medical expenses.

26. On January 20, 2023, after 6:00 pm on Friday, Plaintiff received a call from Adetutu Akinwumiju ("Ms. Akinwumiju"), IAG's business operations coordinator, who advised that she needed documents from 2021 to 2022 for training of certain staff that work at IAG. Ms.

Akinwumiju sent Plaintiff a list of staff members that she wanted training documentation for. She stated that this is something that DDS mandated. Plaintiff texted her team the list of documents needed as soon as possible because a DDS representative was asking for documents by Monday morning. Plaintiff contacted Ms. Akinwumiju with information needed the next day.

27. On Monday January 23, 2023, Plaintiff contacted her supervisor, Dr. Nelson, and reported the incident. She raised her concerns about constantly finding out things at the very last minute, holding the team to unreasonable expectations, and demanding to produce documents to which Plaintiff did not have access to and some of which was prior to her employment with IAG. Plaintiff insisted IAG hire a medical coordinator to help manage some of the paperwork needed on a daily basis and for another nurse to help out with the team and caseloads. Dr. Nelson responded that both of these requests needed to be brought to the Executive Director, Dr. Charlene Bennett's attention for approval.

28. On February 1, 2023, Plaintiff had a CPR class with new hires. She was asked to perform CPR training for the staff because the current trainer, Mr. Olatuyi, needed to step down per Ms. Satcher from Human Resources. As a new trainer, Plaintiff agreed with Mr. Olatuyi that she would lead the class, as this was a requirement from the American Red Cross for a new instructor. This was the first time that Mr. Olatuyi and Plaintiff taught a CPR class together. However, Mr. Olatuyi did not follow the accepted CPR guidelines. A doctor called the Plaintiff, and she stepped out for about 10 minutes during the training to discuss an urgent situation with one of the DDS supported persons. When Plaintiff came back, the trainees were supposed to be practicing CPR on the mannequins. However, they were already taking the final test. Plaintiff asked Mr. Olatuyi if they had practiced CPR and he assured her they

had. He suggested that they had taken CPR classes before. Plaintiff immediately stopped the class and told the trainees to practice CPR to ensure that they are competent to do so and do not get nervous in case of an emergency. As they attempted to perform CPR on the mannequins, Plaintiff could readily see that they did not know how to perform CPR correctly and were not following protocol.

29. After trainees demonstrated CPR on the mannequins, they finished taking their test. Mr. Olatuyi asked Plaintiff to review the test answers. As Plaintiff was checking the completed tests, she noticed that the trainees had several incorrect answers. Plaintiff asked Mr. Olatuyi whether he was going to review the questions or retest the trainees. Mr. Olatuyi responded, "it is just a test," and "we do not have to check the test." Subsequently, Plaintiff reported this incident to Ms. Satcher on that Friday, February 3, 2023, noting her concerns that proper standards were not being adhered to and that Mr. Olatuyi should no longer be in charge of medical trainings. Dr. Nelson was out on leave on that Friday and Plaintiff was unable to discuss her concerns with her supervisor.

30. On February 3, 2023, Defendant held a company orientation for new hires and nursing team members including Plaintiff, Kathy-Ann Ross, Comfort Sema ("Ms. Sema"), and Kidest Adnew. Prior to the orientation training, Plaintiff was contacted by LPN Simone Anderson about a DDS supported person's medication. The medication had already been dispensed from the pharmacy. Plaintiff contacted Ms. Sema, the assigned nurse to the individual in need of medication, who stated she would drop off the medication after the training. After the training, when Plaintiff saw Ms. Sema leaving, Plaintiff quickly reminded her to take the medication to be dropped off. Ms. Sema turned around saying "oh my gosh, I'm in a rush to pick my son up, please can you drop it for me?" Plaintiff agreed.

31. On February 6, 2023, during a discussion with Dr. Nelson and Ms. Nyan, Plaintiff was falsely told that she stated to Ms. Sema "I'm gonna smack you" as Ms. Sema was leaving on February 3, 2023. The conversation ended with Dr. Nelson dismissing Ms. Nyan and explaining that he wanted Plaintiff to work on the companies' performance report card issued from DDS. Plaintiff then asked him if he was going to write her up for an alleged comment and Dr. Nelson stated "no" but expressed that he may have to report this incident to the corporate office.

32. On February 7, 2023, Plaintiff was placed on administrative leave via email.

33. On or about March 8, 2023, Plaintiff was terminated via phone. Another employee, RN Kathy-Ann Ross, who also complained about lack of DDS compliance, was forced to resign shortly after making complaints.

**COUNT ONE**
**<u>RETALIATION</u>**
**The False Claims Act**
**31 U.S.C. §§ 3729 – 3733**

34. Plaintiff hereby restates and incorporates paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35. That the aforementioned acts of retaliation, including the hostility, the unwarranted discipline, and the wrongful termination, were the direct result of Plaintiff's complaints of illegal actions, including the efforts of IAG to defraud the United States Government, which constitute unlawful employment practices pursuant to the False Claims Act, 31 U.S.C. § 3730.

36. The aforementioned legally protected activities were known by upper management to have occurred.

37. That the effect of the practices complained of above was to deprive Plaintiff of equal

employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

38. That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiffs rights.

39. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, incurred attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT TWO**
**RETALIATION**
**The DC False Claims Act**
**D.C. Code § 2-381.04.**

40. Plaintiff hereby restates and incorporates paragraphs 1 through 33 of this Complaint as though fully set forth herein.

41. That the aforementioned acts of retaliation, including the hostility, the unwarranted discipline, and the wrongful termination, were the direct result of Plaintiff's complaints of illegal actions, including the efforts of IAG to defraud the DC Government, constitute unlawful employment practices pursuant to the DC False Claims Act D.C. Code § 2-381.04.

42. The aforementioned legally protected activities were known by upper management to have occurred.

43. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

44. That the intentional retaliatory actions complained of above were done with malice and/or

with reckless indifference to Plaintiffs rights.

45. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, incurred attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT THREE**
**WRONGFUL DISCHARGE**

46. Plaintiff hereby restates and realleges each of the facts set forth in paragraphs 1 -33 as though fully set forth herein.

47. There exists in the District of Columbia a clear mandate of public policy in favor of allowing employees to report to management health or safety issues, to complain about acts of retaliation for having done so, and to complain of fraudulent activities of the employer. This mandate is set forth in the D.C. Law l6-264, the "Department on Disability Services Establishment Act of 2006," effective March 14,2007 (D.C. Official Code §7-761.01 et seq.); and in D.C. Law 15-332, the "Rehabilitation Services Program Establishment Act of 2005," effective April 12, 2005 (D.C. Official Code § 32-331 et seq. and the DC False Claims Act

48. The ongoing retaliation and harassment Plaintiff was subjected to after making her various complaints amounted to an unreasonably hostile work environment for reporting a violation of public policy, which further resulted in Plaintiff's discharge.

49. The discharge of Plaintiff's employment was not for good cause, and deprived Plaintiff of a fair and reasonable opportunity to remain in a position.

50. As a proximate result, Plaintiff has suffered, and continues to suffer, lost wages and benefits, emotional trauma, and has incurred attorney's fees and court costs.

51. Defendant carried out the foregoing acts of retaliation and harassment intentionally and

with malicious intent.

**PRAYER FOR DAMAGES**

WHEREFORE, for the foregoing reasons, Tarren Evans, Plaintiff, demands judgment against Defendant, Individual Advocacy Group Inc. as follows:

a. Compensatory damages in the amount according to proof;

b. Lost benefits and medical bills

c. Prejudgment and post judgment interest;

d. Punitive damages in the amount according to proof;

d. Award attorney's fees and costs, including expert witness fees, as allowed by law;

e. Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, and inconvenience;

f. And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully submitted,

_____/s/ Paul V. Bennett_____________
Paul V. Bennett, Esq., Bar No. 427358
Bennett Legal Services, INC.
5457 Twin Knolls Road, Suite 300 Columbia,
Maryland 21045
Telephone: (410) 886-7457
Facsimile: (888) 292-2158
Email: pbennett@bennettlaw.net
*Attorney for Plaintiff*

| | | |
|---|---|---|
| TARREN EVANS<br>724 Garrett A. Morgan Blvd<br>Landover, MD 20785 | * | IN THE |
| | * | UNITED STATES DISTRICT |
| Plaintiff | * | COURT FOR THE |
| v. | * | DISTRICT OF COLUMBIA |
| INDIVIDUAL ADVOCACY GROUP, INC<br>8121 Georgia Ave, Suite 1004<br>Silver Spring, MD 20910 | * | |
| Serve on: | * | CIVIL ACTION NO. ____________ |
| C T CORPORATION SYSTEM<br>1015 15th St NW, Suite 1000<br>Washington<br>DC 20005 | * | |
| Defendant. | * | |

* * * * * * * * * * * * *

**DEMAND FOR JURY TRIAL**

Plaintiff, Tarren Evans, hereby demands a trial by jury in the above referenced matter for all Counts triable by right thereof.

Respectfully submitted,

__/s/Paul V. Bennett______________

Paul V. Bennett, Esq., Bar No. 427358
Bennett Legal Services, INC.
5457 Twin Knolls Road, Suite 300 Columbia, Maryland 21045
Telephone: (410) 886-7457
Facsimile: (888) 292-2158
Email: pbennett@bennettlaw.net

*Attorney for Plaintiff*