UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| TARREN EVANS,<br><br>Plaintiff,<br><br>v.<br><br>INDIVIDUAL ADVOCACY, GROUP, INC,<br><br>Defendant. | Civil Action No. 1:23-cv-03925 |

**SECOND AMENDED COMPLAINT**

**COMES NOW,** Tarren Evans, by and through her attorneys, Paul V. Bennett, Esq. and Bennett Legal Services, Inc., and hereby sues Individual Advocacy Group, Inc. (hereinafter "IAG"), Defendant, and states as follows:

**SUMMARY OF THE CASE**

1. This complaint is based on the harassment and retaliation Plaintiff suffered as an employee of Defendant IAG, including her wrongful termination, following Plaintiff reporting and complaining about lack of proper training, and her complaints about improper and illegal business practices, including falsification of business records with the purpose of defrauding the District of Columbia Department on Disability Services ("DDS").

**JURISDICTION AND VENUE**

2. This court has jurisdiction pursuant to The False Claims Act (FCA), 31 U.S.C. §§ 3729 – 3733; The DC False Claims Act, D.C. Code § 2-381.04; D.C. Law l6-264, the "Department on Disability Services Establishment Act of 2006," effective March 14,2007 (D.C. Official Code §7-761.01 et seq.); and in D.C. Law 15-332, the "Rehabilitation Services Program

Establishment Act of 2005," effective April 12, 2005 (D.C. Official Code § 32-331 et seq.) (hereinafter "DC Code").

3. Venue is proper in this Court as the events giving rise to Plaintiff's claims occurred in the District of Columbia and Defendant conducts business within the District of Columbia.
4. That at all times relevant hereto, Tarren Evans, Plaintiff, was an employee of the Defendant in the District of Columbia.
5. That at all times relevant hereto, Defendant IAG, was a nonprofit organization serving adults with disabilities to help them lead meaningful lives. At all times relevant hereto, IAG was contracted to provide services for the DC government, Department on Disability Services.

**FACTS COMMON TO ALL COUNTS**

6. Plaintiff was hired by Defendant on or about April 18, 2022 as a Clinical Nursing Director. Her job duties included oversight of IAG's nursing staff and overall nursing operations, specifically evaluating and directing all nursing employees, and establishing goals for the nursing department. Throughout her employment with Defendant, Plaintiff performed her job duties at a level that met or exceeded her employer's reasonable expectations.
7. That at all times relevant hereto, DDS is a government agency which supports Person Centered Individual Service Plans, service tracking, Medicare and Medicaid Waivers tracking, incident management, consumer intake, provider tracking, quality assurance issue tracking and management reporting to support the service needs of individuals with disabilities.
8. While employed with Defendant, Plaintiff reported to regional director, Dr. Casey Nelson ("Dr. Nelson").

9. Upon hire, Plaintiff's mutually agreed upon schedule was Monday, Wednesday and Friday due to her other employment.

10. In early May 2022, Plaintiff was called by Dr. Nelson to conduct an Individual Support Plan ("ISP") meeting on a Tuesday. Plaintiff had no knowledge about the supported person at the time and had not yet been fully trained on the DDS processes and annual renewals. She reminded Dr. Nelson of their agreement of lack of availability on Tuesdays and Thursdays.

11. The previous Clinical Nursing Director, Izeku Ekatah a/k/a Izzy, was responsible to train Plaintiff as to the proper manner for conducting her duties, but Director Izzy failed to properly train Plaintiff before she resigned from her position on June 3, 2022.

12. Unlike the previous Clinical Nursing Director, Plaintiff was assigned a full caseload of 10 individuals, and to adhere to clinical needs of all individuals supported from day-to-day, and was required to manage 2 Registered Nurses, 3 Licensed Practical Nurses, and several trained medication employees ("TMEs") which is unprecedented for this position.

13. Upon information and belief, Plaintiff was the only District's Clinical Nursing Director who was assigned such a caseload. Due to the heavy workload, Plaintiff was forced to work on several off days without pay. The responsibilities were accepted by Plaintiff as she was unaware of the multitude of tasks that would unfold due to improper training completed by Mr. Olatuyi. Dr. Nelson and the outgoing Director of Nursing Izzy failed to comply with DDS mandatory training requirements and schedule Plaintiff for this training at the start of employment.

14. In approximately May/June of 2022, Plaintiff first raised her concerns about the lack of training to Dr. Nelson.

15. Shortly after, from approximately June 10, 2022 onwards, Plaintiff was instructed on different occasions by IAG management officials: Gideon Olatuyi ("Mr. Olatuyi"), Director of Quality Improvement and Martha Nyan ("Ms. Nyan"), Deputy Director, to backdate certain training documents, so that it appeared the training had been completed on an earlier date to avoid residential, medical, or environmental deficiencies with annual contract renewals, individual support plan (ISP) meetings, and trainings being posted on the DDS dashboard.
16. On or about June 10, 2022, Plaintiff raised concerns to the house manager, Helen Mepfue and Mr. Olatuyi after noticing the backdating of training records and questioned reasons for this practice. She was told by Mr. Olatuyi that if IAG's management needed to turn in documentation and the real date and time stamp was out of compliance, IAG would get reprimanded for being out of compliance with DDS. Mr. Olatuyi who trained the Plaintiff and was also the liaison for compliance for the organization's DC region, confirmed to the Plaintiff that this alteration was okay within regulations of DDS.
17. In late August 2022, during a medical compliance audit of the individual receiving IAG's services (supported person), Benjamin Guilluame, a DDS nurse auditor, informed Plaintiff that there was an approved mandatory training requirement by DDS within 14 days of employment for nurses new to DDS. The following day, Plaintiff raised her concerns again to Dr. Nelson about the lack of appropriate training she had been given.
18. In September of 2022, when Plaintiff asked that Defendant hire an additional nurse to make up for the heavy workload, the management brought back a previously employed community nurse Comfort Sema, RN, on a part-time basis.
19. On multiple occasions, between June of 2022, and March 8, 2023, Plaintiff complained about

the general lack of organization within IAG and how DDS supported persons' care was being compromised at the Defendant's housing facilities. Plaintiff was pressured by Mr. Olatuyi and Ms. Nyan to make misrepresentations of facts to obtain Federal health care payments such as backdate annual "checks offs" and patients' consent forms, and/or ISP annual documents as identified by service coordinators on the DDS dashboard in the DDS Consumer Information System (MCIS).[1] When she learned such acts were illegal and refused to partake in them, she was retaliated against by being excluded from crucial meetings and deprived of information needed to fulfill her job duties.

20. Between November of 2022 and January of 2023, Plaintiff had numerous discussions with Dr. Nelson, and Ms. Nyan when she complained about the misrepresentations and backdating.

21. As a result, Plaintiff was ostracized, ignored, deprived of the meeting agendas, and excluded from crucial annual "check offs" meetings particularly towards the end of her employment between December 2022 to March 2023. Ms. Sherri Satcher ("Ms. Satcher"), Human Resources Coordinator, would commonly overstep her job title and raise questions about Plaintiff's medical expertise.

22. On or around December of 2022, while driving into the office, the Plaintiff was asked by Ms. Nyan to pull over to join a meeting that she had no knowledge about.

23. After Plaintiff started making her complaints about illegal actions, as well as the hostility to which she was being subjected, Plaintiff was subjugated to retaliation, including being required to work on her agreed upon days off.

---

[1] DDS dashboard connects service providers to data and reports published by service coordinators in the MCIS database. MCIS is the web-based data system DDS and related agencies use to provide automated tracking of individual consumer data.

24. On or around September 2022, Plaintiff insisted that IAG start utilizing their electronic health records. IAG purchased prior to Plaintiff's employment a web-based application called "Therap" that enables Intellectual and Developmental Disabilities (I/DD) service providers to manage and track records for health assessments, medical errors, nursing care plans, training, and billing. However, IAG only used "Therap" for tracking individual daily medical appointments. On several occasions Plaintiff urged management to replace paper staff training records with the "real time" electronic health records. After one of the administrative meetings, Plaintiff was taken aside by Mr. Olatuyi who stated that "going live" with online records will never happen within IAG due to the backdating of documents and running the risk of getting audited by DDS.

25. In around December of 2022, Plaintiff again urged Dr. Nelson, and Ms. Nyan to use "Therap," "real time" electronic health records, but they did not act. Plaintiff also raised her concerns about the generally hostile work environment to Dr. Nelson and Martha Nyan. On at least one occasion, she mentioned that Defendant's compliance deficiencies with DDS regulations might jeopardize her professional licenses. Both Dr. Nelson, and Ms. Nyan indicated that no one else had such complaints. Before Plaintiff was terminated, she mentioned these concerns to Sheri Satcher, Human Resource coordinator. She also planned to confront Dr. Nelson regarding Mr. Olatuyi's failure to adhere to DDS guidelines as the liaison for the DC sector. Plaintiff believed in the organization and mission statement and wanted to aid in correcting these illegal practices. Plaintiff asked Dr. Nelson for time off to fully complete the DDS training but was denied.

26. Plaintiff was frustrated at Dr Nelson's inaction regarding the backdating and lack of use of electronic health records, and in December of 2022/January of 2023 made a series of

complaints about it to Sheri Satcher from Human Resources. Plaintiff questioned IAG's outdated paper charting system while IAG paid for an online charting system that was not utilized. Due to this loophole IAG was able to backdate documents when necessary. IAG was more concerned about not losing money over contracts to follow the regulations properly. Plaintiff did not take it lightly because she was going over Mr. Olatuyi and Ms. Nyan.

27. Plaintiff told Ms. Nyan that IAG was not in compliance with terms and conditions under which it was receiving federal funds from DDS contracts, and ultimately receiving funds from Medicare and Medicaid. Plaintiff wanted to set up a meeting to discuss her concerns in detail with Dr. Nelson and loop in Dr. Bennett. Plaintiff requested corrective action again, but none was taken. Plaintiff also complained about backdating to the DDS nurse. Plaintiff described in detail the incidents of backdating to purport timely trainings, obvious deviations from acceptable standards. She requested the use of electronic health records again, but nothing was done.

28. On or about December 31, 2022, Defendant discontinued Plaintiff's medical insurance without informing her. Plaintiff found out about it during her first pregnancy doctor's visit approximately beginning of March 2023. At that time Defendant sent her preventive medical insurance cards only, which was not comparable at all with the coverage agreed upon hiring. As a result, Plaintiff suffered significant out of the pocket medical expenses. Plaintiff was unable to enroll in COBRA as a result of termination.

29. On or around January 2023, the backdating of documents was brought up again during a meeting between a guardian of a supported person and DDS service coordinator. All members of the IAG's administrative team were present at the meeting via zoom call, including Plaintiff's supervisor, Dr. Nelson. The guardian brought up a backdated consent

form that was sent to her. The DDS coordinator immediately scolded the IAG team for not sending her documentation to sign in "real time," which was an illegal action. Thus, Plaintiff's suspicions of faulty documentation practices were confirmed, and Plaintiff raised her concerns again to Sheri Satcher from Human Resources in hope that she can arrange a meeting with Dr. Nelson, and the Executive Director, Dr. Charlene Bennett.

30. On January 20, 2023, after 6:00 pm on Friday, Plaintiff received a call from Adetutu Akinwumiju ("Ms. Akinwumiju"), IAG's business operations coordinator, who advised that she needed documents from 2021 to 2022 for training of certain staff that work at IAG. Ms. Akinwumiju sent Plaintiff a list of staff members that she wanted training documentation for. She stated that this is something that DDS mandated. Plaintiff texted her team the list of documents needed as soon as possible because a DDS representative was asking for documents by Monday morning. Plaintiff contacted Ms. Akinwumiju with information needed the next day.

31. On Monday January 23, 2023, Plaintiff contacted her supervisor, Dr. Nelson, and reported this incident and her other concerns regarding recordkeeping. She complained about constantly finding out things at the very last minute, holding the team to unreasonable expectations, and demanding to produce documents to which Plaintiff did not have access to and some of which was prior to her employment with IAG. Plaintiff insisted IAG hire a medical coordinator to help manage some of the paperwork needed on a daily basis and for another nurse to help out with the team and caseloads. Dr. Nelson responded that both of these requests needed to be brought to the Executive Director, Dr. Charlene Bennett's attention for approval. However, Dr. Nelson failed to contact Dr. Bennett as he assured Plaintiff.

32. On February 1, 2023, Plaintiff had a CPR class with new hires. She was asked to get cerftified as an instructor to perform CPR training for the staff because the current trainer, Mr. Olatuyi, needed to step down at DDS request due to an internal investigation per Ms. Satcher stated from Human Resources. As a new trainer, Plaintiff agreed with Mr. Olatuyi that she would lead the class, as this was a requirement from the American Red Cross for a new instructor. This was the first time that Mr. Olatuyi and Plaintiff taught a CPR class together. However, Mr. Olatuyi did not follow the accepted CPR guidelines. A doctor called the Plaintiff, and she stepped out for about 10 minutes during the training to discuss an urgent situation with one of the DDS supported persons. When Plaintiff came back, the trainees were supposed to be practicing CPR on the mannequins. However, they were already taking the final test. Plaintiff asked Mr. Olatuyi if they had practiced CPR and he assured her they had. He suggested that they had taken CPR classes before. Plaintiff immediately stopped the class and told the trainees to practice CPR to ensure that they are competent to do so and do not get nervous in case of an emergency. As they attempted to perform CPR on the mannequins, Plaintiff could readily see that they did not know how to perform CPR correctly and were not following protocol.
33. After trainees demonstrated CPR on the mannequins, they finished taking their test. Mr. Olatuyi asked Plaintiff to review the test answers. As Plaintiff was checking the completed tests, she noticed that the trainees had several incorrect answers. Plaintiff asked Mr. Olatuyi whether he was going to review the questions or retest the trainees. Mr. Olatuyi responded, “it is just a test,” and “we do not have to check the test.”
34. Subsequently, on that Friday, February 3, 2023, Plaintiff reported the negligent CPR training incident to Ms. Satcher noting her concerns that proper standards were not being adhered to

not only with regards to backdating, but also actual medical trainings. She suggested that Mr. Olatuyi should no longer be in charge of medical trainings. She insisted she wanted Ms. Satcher to arrange a meeting with Dr. Bennett to discuss all the issues from backdating to faulty CPR trainings. Dr. Nelson was out on leave on that Friday and Plaintiff was unable to follow up on her previous complaints or discuss her old and new concerns with her supervisor.

35. Later that day, on February 3, 2023, Defendant held a company orientation for new hires and nursing team members including Plaintiff, Kathy-Ann Ross, Comfort Sema ("Ms. Sema"), and Kidest Adnew. Prior to the orientation training, Plaintiff was contacted by LPN Simone Anderson about a DDS supported person's medication. The medication had already been dispensed from the pharmacy. Plaintiff asked Ms. Sema, the assigned nurse to the individual in need of medication, who stated initially she would drop off the medication after the training. After the training, when Plaintiff saw Ms. Sema leaving, Plaintiff quickly reminded her to take the medication to be dropped off. Ms. Sema turned around saying "oh my gosh, I'm in a rush to pick my son up, please can you drop it for me?" Plaintiff agreed.

36. On February 6, 2023, Plaintiff was invited to the meeting with Dr. Nelson and Ms. Nyan. Plaintiff was convinced that meeting will focus on her complaint regarding backdating and faulty CPR trainings. She started by asking about the status of her previous complaints and inquiring when she will be able to talk with Dr. Bennett. However, during a discussion with Dr. Nelson and Ms. Nyan, Plaintiff was falsely told that she stated to Ms. Sema "I'm gonna smack you" as Ms. Sema was leaving on February 3, 2023. The conversation ended with Dr. Nelson dismissing Ms. Nyan and explaining that he wanted Plaintiff to work on the companies' performance report card issued from DDS. Plaintiff then asked him if he was

going to write her up for an alleged comment and Dr. Nelson stated "no," but expressed that he may have to report this incident to the corporate office. After the meeting, Plaintiff attempted to contact Dr. Bennett.

37. On February 7, 2023, Plaintiff was placed on administrative leave via email.

38. On or about March 8, 2023, Plaintiff was terminated via phone. Another employee, RN Kathy-Ann Ross, who also complained about lack of DDS compliance, was forced to resign shortly after making complaints.

39. Ms. Sema since then has voluntary relinquished her Registered Nursing License.

**COUNT ONE**
**<u>RETALIATION</u>**
**The False Claims Act**
**31 U.S.C. §§ 3729 – 3733**

40. Plaintiff hereby restates and incorporates paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41. That the aforementioned acts of retaliation, including the hostility, the unwarranted discipline, and the wrongful termination, were the direct result of Plaintiff's complaints of illegal actions, including the efforts of IAG to defraud the United States Government, which constitute unlawful employment practices pursuant to the False Claims Act, 31 U.S.C. § 3730.

42. The aforementioned legally protected activities were known by upper management to have occurred.

43. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

44. That the intentional retaliatory actions complained of above were done with malice and/or

with reckless indifference to Plaintiffs rights.

45. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, incurred attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT TWO**
**RETALIATION**
**The DC False Claims Act**
**D.C. Code § 2-381.04.**

46. Plaintiff hereby restates and incorporates paragraphs 1 through 39 of this Complaint as though fully set forth herein.

47. That the aforementioned acts of retaliation, including the hostility, the unwarranted discipline, and the wrongful termination, were the direct result of Plaintiff's complaints of illegal actions, including the efforts of IAG to defraud the DC Government, constitute unlawful employment practices pursuant to the DC False Claims Act D.C. Code § 2-381.04.

48. The aforementioned legally protected activities were known by upper management to have occurred.

49. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

50. That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiffs rights.

51. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, incurred attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Tarren Evans, Plaintiff, demands judgment against Defendant, Individual Advocacy Group Inc. as follows:

a. Compensatory damages in the amount according to proof;

b. Lost benefits and medical bills

c. Prejudgment and post judgment interest;

d. Punitive damages in the amount according to proof;

d. Award attorney's fees and costs, including expert witness fees, as allowed by law;

e. Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, and inconvenience;

f. And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully submitted,

_/s/ Paul V. Bennett____________
Paul V. Bennett, Esq., Bar No. 427358
Bennett Legal Services, INC.
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
Telephone: (410) 886-7457
Facsimile: (888) 292-2158
Email: pbennett@bennettlaw.net
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| TARREN EVANS,<br><br>Plaintiff,<br><br>v.<br><br>INDIVIDUAL ADVOCACY,<br>GROUP, INC,<br><br>Defendant. | Civil Action No. 1:23-cv-03925 |

**DEMAND FOR JURY TRIAL**

Plaintiff, Tarren Evans, hereby demands a trial by jury in the above referenced matter for all Counts triable by right thereof.

Respectfully submitted,

_/s/ Paul V. Bennett_______________

Paul V. Bennett, Esq., Bar No. 427358
Bennett Legal Services, INC.
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
Telephone: (410) 886-7457
Facsimile: (888) 292-2158
Email: pbennett@bennettlaw.net

*Attorney for Plaintiff*